[Cite as *Malmon-Berg v. Malmon-Berg*, 2014-Ohio-1784.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

THERESA K. MALMON-BERG
nka BERG

      Appellant

      v.

MICHAEL D. MALMON-BERG
nka MALMON

      Appellee

C.A. No.     13CA0005


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    09-DR-0116

DECISION AND JOURNAL ENTRY

Dated: April 28, 2014

---

CARR, Judge.

**{¶1}** Appellant Theresa Malmon-Berg, nka Berg ("Mother") appeals the judgment of the Wayne County Court of Common Pleas. This Court affirms.

I.

**{¶2}** Michael Malmon-Berg, nka Malmon ("Father") and Mother had two children during the course of their marriage, a daughter ("S.") and a son ("A.J."). The parties filed competing complaints for divorce. Father submitted a proposed shared parenting plan to the court for consideration. Although Mother opposed shared parenting and sought sole custody of the children she too submitted a proposed shared parenting plan as an alternative. The trial court crafted a shared parenting plan from portions of each party's proposed plan. Mother became the residential parent for school purposes of both children. Both parents lived in the Wooster, Ohio, area at the time.

{¶3}   Mother later desired to relocate to California, where she had family and a job opportunity.  She filed a motion to relocate with both children, followed by a motion for reallocation of parental rights and responsibilities and for modification of the shared parenting plan.  Mother incorporated into her second motion two concerns about the effect of Father's diagnosed sex addiction on the children.  Father opposed the motions, and the court denied all of Mother's motions.  Subsequently, the parties submitted an agreed revised shared parenting plan to the court for approval.  On August 31, 2011, the trial court adopted the revised shared parenting plan as the order of the court.  Under the revised plan, Mother's home in California became the primary residence of S., while Father's home in Wooster became the primary residence of A.J.  The revised plan contained a provision indicating that the plan was premised upon Father's continued participation in treatment for his sex addiction.  Father had already lost his job as a psychologist at the College of Wooster at the time the parties executed the revised parenting plan.  In response to those circumstances, the plan contained a provision stating that the plan would be "revisited and renegotiated" if Father obtained employment and relocated outside of Wayne County.  The plan further provided that the parties were to remain flexible in the best interest of the children and that they would first seek co-parenting counseling, mediation, or non-binding arbitration before seeking court intervention to resolve disputes.

{¶4}   Father later obtained employment in Colorado, and he filed a notice of relocation.  Mother opposed Father's relocation and filed a motion to restrain Father from relocating with A.J.  She premised both arguments on the language of the revised shared parenting plan that stated that any relocation by Father would constitute a change of circumstances requiring the parties to revisit and renegotiate the plan in the best interest of the children.  On the day scheduled for hearing on the above motions, Mother filed a motion for reallocation of parental

rights and responsibilities and for modification of the shared parenting plan, citing as grounds for the motion that Father only gave 2 weeks' notice of relocation and that there was inherent harm to A.J. because he would have to move away from his friends, school, counselor, and support system in Wooster. Mother also argued that the relocation would require Father to leave his sex addiction support system. Mother did not argue that Father had behaved inappropriately or had failed to continue to participate in his sex addiction treatment plan.

{¶5} The trial court held two hearings on February 15, 2012. In the morning, the magistrate heard Mother's argument that Father's relocation automatically required a modification of the shared parenting plan. Father argued, and the magistrate agreed, that the language in the parties' revised plan did not require modification. Rather, the plan merely acknowledged that relocation by Father would constitute a change in circumstances. The magistrate concluded that Mother was free to move to modify the plan based on that change of circumstances and that the court would then consider whether a modification of the plan was in the best interest of the children.

{¶6} Later on the same day, the judge held a hearing to determine whether or not the court should restrain Father from moving to Colorado with A.J. The court agreed with Father that there was no prohibition in the parties' agreed revised plan against Father's relocation. The court, therefore, denied Mother's motion for an emergency restraining order.

{¶7} The magistrate subsequently held a hearing on Mother's motion for reallocation of parental rights and responsibilities and for modification of the shared parenting plan. The magistrate held in camera interviews with each child, considered the deposition transcript of A.J.'s prior counselor in Ohio, and heard the testimony of Mother and Father. The magistrate issued a decision denying Mother's motions. The trial court adopted the magistrate's decision

the same day and ordered that the parties' agreed revised shared parenting plan would remain unchanged. Mother filed objections to the magistrate's decision and Father responded in opposition. The trial court overruled Mother's objections on November 6, 2012. Mother moved the court for findings of fact and conclusions of law. On January 8, 2013, the trial court issued a judgment entry of findings of fact, conclusions of law, and final order. The court expressly denied her motion for reallocation of parental rights and responsibilities and for modification of the shared parenting plan. Mother filed a notice of appeal on February 5, 2013.

{¶8} As a preliminary matter, we note that Father has moved to dismiss Mother's appeal as untimely because she filed her notice of appeal more than thirty days after the trial court filed its ruling denying Mother's objections.

{¶9} We have repeatedly recognized: "'Even if a trial court's journal entry is a judgment or final order, it is not appealable if it does not comply with the rules prescribed by the Ohio Supreme Court regarding the timing of appeals.'" *Children's Hosp. v. Paluch*, 9th Dist. Summit No. 26189, 2012-Ohio-4137, ¶ 7, quoting *Zaffer v. Zaffer*, 9th Dist. Lorain No. 10CA009884, 2011-Ohio-3625, ¶ 3.

{¶10} App.R. 4(A) addresses the time for appeal and states:

A party shall file the notice of appeal required by App.R. 3 within thirty days of the later of entry of the judgment or order appealed or, in a civil case, service of the notice of judgment and its entry if service is not made on the party within the three day period in Rule 58(B) of the Ohio Rules of Civil Procedure.

{¶11} Accordingly, we have recognized that "'App.R. 4(A) thus contains a tolling provision that applies in civil matters when a judgment has not been properly served on a party according to Civ.R. 58(B).'" *Paluch* at ¶ 9, quoting *In re Anderson*, 92 Ohio St.3d 63, 67 (2001). The *Anderson* court explained:

> Civ.R. 58(B) requires the court to endorse on its judgment a direction to the clerk to serve upon all parties * * * notice of the judgment and its date of entry upon the journal. The clerk must then serve the parties within three days of entering judgment upon the journal. The thirty-day time limit for filing the notice of appeal does not begin to run until after the later of (1) entry of the judgment or order appealed if the notice mandated by Civ.R. 58(B) is served within three days of the entry of the judgment; or (2) service of the notice of judgment and its date of entry if service is not made on the party within the three-day period in Civ.R. 58(B).

(Internal quotations and citations omitted.) *Id*.

{¶12} We need not, and do not, here consider whether Mother's motion for findings of fact and conclusions of law extended the thirty-day time for appeal. In this case, the trial court never endorsed upon either judgment entry the required direction to the clerk to serve notice of the judgment and its date of entry upon the journal upon all the parties as required by Civ.R. 58(B). In the absence of such a direction, the running of the time for appeal was tolled. Accordingly, Mother's appeal is timely. Father's motion to dismiss is denied.

II.

**ASSIGNMENT OF ERROR I**

> THE FINDING THAT THE ONLY CHANGE IN CIRCUMSTANCES [IS] THE MOVE OF [FATHER] AND A.J. FROM WOOSTER, OHIO TO GREENWOOD VILLAGE, COLORADO IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THIS CASE AND AN ABUSE OF DISCRETION BY THE TRIAL COURT.

{¶13} Mother purports to argue that the trial court erred in finding that the only change in circumstances underlying its refusal to modify the parties' shared parenting plan was Father's move to Colorado. This Court declines to address this assignment of error because Mother abandoned the argument in her brief when she wrote:

> The fact in this case is that the issue of whether a change of circumstances has occurred or not is simply not at issue at all. This has already been stipulated to by the parties in their previously ordered Revised Shared Parenting Plan * * * [which] clearly states that "[i]f for any reason, Father relocates his residence

outside of Wayne County, Ohio or accepts an employment position outside of Wayne County or one of its immediately adjacent counties, this will be construed as a change in circumstances and this shared parenting plan will be revisited and renegotiated in the best interests of the children at that time." So a change of circumstances is a stipulation by the parties at the time of the hearing. * * * *So the hearing officer's only job in this matter was to weigh the factors of [R.C.] 3109.04(F) against the evidence presented to determine what course of action promotes the best interests of the children at this time.*

Emphasis added.

{¶14} Accordingly, as Mother has abandoned the first error assigned, we decline to address it.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT'S DETERMINATION THAT THERE WOULD VIRTUALLY BE NO BENEFIT TO A.J. BY MODIFYING OR TERMINATING THE REVISED SHARED PARENTING PLAN IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THIS CASE AND [IS] DIRECTLY OPPOSITIONAL TO THE CHILD'S BEST INTERESTS AS EXPRESSED BY HIS COUNSELOR, HIS MOTHER, AND HIS SISTER AND CONSTITUTES AN ABUSE OF DISCRETION.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT'S DECISION NEGLECTS TO PROPERLY CONSIDER ALL THE FACTORS REQUIRED BY [R.C.] 3109.04 IN WEIGHING THE MOTION FOR TERMINATION OR MODIFICATION OF THE SHARED PARENTING PLAN. THIS IS AN ERROR AS A MATTER OF LAW AND AN ABUSE OF THE TRIAL COURT'S DISCRETION.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT'S DECISION FAILS TO PROPERLY CONSIDER THE EVIDENCE PRESENTED AT COURT AND TO ACCORD PROPER WEIGHT TO THE ADMITTED ACTIONS AND BEHAVIORS OF [FATHER] THAT HAS NEGATIVELY AFFECTED THESE CHILDREN AND IS NOT IN PROMOTION OF THE BEST INTERESTS OF ALL THE CHILDREN INVOLVED.

{¶15} Mother does not segregate her arguments as to each assignment of error, but rather argues them together. Accordingly, this Court considers the assignments of error together for ease of discussion, because they implicate interrelated issues. In these assignments of error,

Mother argues that the trial court did not properly consider the factors enumerated in R.C. 3109.04(F)(1) regarding the best interest of the children when it denied Mother's motion to modify or terminate the parties' shared parenting plan. This Court disagrees.

{¶16} As an initial matter, we note that the parties have tacitly agreed in their revised shared parenting plan that any modification of the plan would be governed by R.C. 3109.04(E)(1)(a), which requires a change in circumstances in addition to a finding in the best interest of the child, rather than by R.C. 3109.04(E)(2)(b), which allows for modification of a shared parenting plan based solely on the best interest of the child. This tacit understanding is evidenced by the parties' agreement that any relocation or acceptance of employment by Father outside Wayne County would constitute a change in circumstances necessitating reconsideration of the shared parenting plan in the best interest of the children. Accordingly, any modification of the parties' agreed shared parenting plan, adopted on August 31, 2011, was subject to the considerations in R.C. 3109.04(E)(1)(a). *See also Buttolph v. Buttolph*, 9th Dist. Wayne No. 09CA0003, 2009-Ohio-6909, ¶ 10 (concluding that, because a motion to modify parenting time under a shared parenting plan constitutes a motion for reallocation of parental rights and responsibilities, it must be considered pursuant to R.C. 3109.04(E)(1)(a)).

{¶17} R.C. 3109.04(E)(1)(a) provides:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶18} R.C. 3109.04(F)(1) directs the trial court to consider "all relevant factors" in determining the best interest of the child. The statute enumerates a non-exhaustive list, including:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers * * * regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of [domestic violence] or a sexually oriented offense involving a victim who at the time of the commission of

the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

**{¶19}** This Court reviews the trial court's judgment regarding modification or termination of a shared parenting plan for an abuse of discretion. *Batcher v. Pierce*, 9th Dist. Summit No. 26785, 2013-Ohio-4677, ¶ 22. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). In considering a motion to modify a shared parenting plan, the trial court considers "the circumstances as [they] existed at the time of the filing of the motion." *Sims v. Durant*, 5th Dist. Fairfield No. 2008-CA-27, 2008-Ohio-6442, ¶ 6.

**{¶20}** As an initial matter, this Court notes that, while the trial court did not cite the statutory best interest factors, it is apparent from the court's reasoning that it considered those factors relevant to its determination of Mother's motion.

**{¶21}** Mother's argument that the trial court did not properly consider the best interest factors in R.C. 3109.04(F) is effectively an argument that the trial court was unreasonable in reaching the conclusion that a modification or termination of the shared parenting plan was not in the best interest of A.J. Mother did not enunciate the best interest factors in either her

memorandum in support of her objections to the magistrate's decision or in her appellate brief. Instead, she merely recited facts purportedly before the trial court for consideration, and concluded that those circumstances required modification or termination of the parties' shared parenting plan in the best interest of the children. This Court notes, however, that Mother has misstated some evidence and relied on other evidence not relevant to the determination before the trial court.

{¶22} It is significant that the core concern raised by Mother in her motion to modify the agreed shared parenting plan was "the inherent harm [to A.J.] in such a move [to Colorado] away from his friends, school, counselor, and support system here in Wooster, Ohio." Mother further alleged that the move would also result in Father's "leaving behind his support system and his court ordered involvement in SAA group meetings and ongoing individual counseling for his addiction." Mother did not allege, however, that Father had ceased participating in treatment or that Father had relapsed into addiction and that the children were being exposed to inappropriate circumstances and behaviors to their detriment.

{¶23} The crux of Mother's argument on appeal is that Father's sex addiction has consumed him to the point that he is unable to provide the necessary daily care for A.J. The evidence does not bear this out.

{¶24} There is no dispute that Father is a diagnosed sex addict and that the parties' agreed revised shared parenting plan was contingent on Father's continuing to follow the treatment plan recommendations as determined by the counselor who evaluated him pursuant to court order. Father testified that he participated in appropriate treatment prior to leaving Wooster, and that he has established the requisite support system and ongoing treatment in Colorado. Mother did not dispute that Father has provided her with proof of his compliance with

his treatment plan upon her request. The evidence established that Father obtained a counselor in Colorado and that he was attending weekly Sex Addicts Anonymous ("SAA") meetings as required.

{¶25} In addition, Father continued to maintain "net nanny," a filtering software, on his home computer. The software was described as a device to block internet sites based on the use of certain key words relevant to pornography and other proscribed topics. Although A.J.'s former counselor in Wooster testified that A.J. reported that Father offered him $10 if he discovered an inappropriate search in Father's computer history, the counselor testified that that discussion occurred during a session on October 12, 2011. Mother did not base her motion to modify the shared parenting plan on that or any similar incident. In fact, she did not file her motion until more than four months later, only after Father filed his notice of relocation.

{¶26} Significantly, A.J.'s former counselor, who counseled the child from January 2009, until early February 2012, also testified that, although A.J. had felt some stress out of concerns for Father's addiction, the child reported that his concerns had abated as he came to understand that it was not his job to protect his father. The counselor testified regarding other stressors in A.J.'s life too, including his concern that Mother would no longer love him if he chose to continue to live with Father as he desired. The counselor testified as to several sources of stress for A.J., including: (1) the need "to keep his grades up or Mom will go to the Judge;" (2) Father's addiction which "already ruined a marriage and almost custody of me;" (3) being apart from Mother after she moved to California with S.; (4) earning enough points in school to be able to attend a special camp; and (5) Father's unemployment and the possibility that Father and he would have to move if Father found a job outside of Wooster. The counselor testified, however, that stress associated with the fear of the unknown, e.g., a change in school or

residence, is normal. She concluded that A.J. understood that he would need to adapt to his environment wherever his parents were and with whomever he lived.

{¶27} The magistrate conducted separate in camera interviews with both S. and A.J. prior to the hearing, and the transcripts are part of the record. S. admitted that she had not visited with Father by her own choice for approximately seven months and that she had no plans to have contact with him in the foreseeable future. She stated that she believes that Father still has a problem with his addiction and that he does not mind exposing A.J. to the situation. The only example she gave of what she believed was inappropriate behavior occurred in December 2011. S. explained that she was with Father and A.J. in Arizona and she did not like the way that Father and A.J. were interacting because they were sending text messages to one another. S. admitted that she took A.J.'s cell phone without his permission while he was swimming to see what was so important. S. told the magistrate that Father had asked A.J. in a text message about going to an "adult mart." When the magistrate later asked A.J. about the text, A.J. stated that he and Father were joking. Later during the hearing, Father testified that he knew that A.J. was concerned about the possibility of Father's relapsing into addiction, and Father used humor to dispel A.J.'s anxiety. Father testified that A.J. once asked him what an "adult mart" was after they passed one on the highway. After Father explained, A.J. was concerned that Father might stop there when he was alone. Father testified that he later sent A.J. the text as a way of joking about the situation and that the two of them understood the text to be a joke.

{¶28} A.J. told the magistrate that he is no longer concerned about Father's addiction or any other issues. He stated that changing schools was difficult at first, but that he has made some good friends, even spending the night at a friend's house, and that he had joined a baseball team. A.J. reported that he planned to try out for basketball and football during the next year. A.J.

admitted that his grades were not as good in Colorado as they were in Wooster, but he said that his new school had a much higher level of academics. He was now in middle school and taking two advanced level courses, and his grades ranged from As to Cs. He reported that he continues to see a counselor in Colorado every two weeks. Finally, A.J. informed the magistrate that he wants to remain in Colorado with Father. He explained that he has adjusted to his new environment and a move to California to live with Mother would require a new adjustment. A.J. told the magistrate that he now knows that Mother will still love him if he stays with Father. He described his relationships with both Mother and S. as good, while he recognized that the relationship between Father and S. is not good and "not fun to be around."

{¶29} Mother testified at the hearing as follows. She admitted that the parties' agreed shared parenting plan contemplated that Father and A.J. might leave Ohio, if Father had a job opportunity out of state, but she only agreed because she felt "in a corner." She had to move to California (although she did not explain why she believed that move was necessary), and she wanted A.J. to remain in Wooster with familiar friends, school, synagogue, and other activities. She complained that she had difficulty monitoring A.J. in Colorado, because she found it hard to remember the online access code to view A.J.'s school progress and she did not know the parents of his new friends. Mother contacted A.J.'s counselor in Colorado once.

{¶30} Mother expressed concerns that A.J. was tardy or had missed several days of school before moving to Colorado, although the evidence established that his absences and tardies were excused. A.J. accompanied Father on two out-of-state trips to Chicago and Washington, D.C., once for a conference and once for a job interview. A.J. did homework in the hotel room while Father was away. Mother admitted that she no longer had family in Wooster, so it would not have been feasible for Father to have left the child with family while he was

away for a few days. Mother did not suggest that it would have been better for Father to have left A.J. alone in Wooster for those few days.

**{¶31}** Mother was concerned that A.J. was no longer taking Hebrew classes or participating in synagogue activities after his move to Colorado. She admitted, however, that she had never taken A.J. to temple when he visited her in California and that the family was not even affiliated with a synagogue in California. Mother testified that she and the children would choose a synagogue together, if the court were to modify the shared parenting plan and allow A.J. to move to California with her.

**{¶32}** Mother expressed her major concern regarding A.J.'s relocation to Colorado as the fact that he would have no grandparents or other extended family nearby (what she referred to as a support system), while he would have a lot of family nearby in California. Mother admitted that A.J. did not have any extended family nearby when he continued to live with Father in Wooster after Mother moved with S. to California.

**{¶33}** Mother also raised concerns that the children were not living together, although Mother is the one who moved from Wooster to California and agreed that the children would reside apart from one another. She expressed additional concerns that A.J. struggles with weight issues, although those issues arose prior to the divorce and Mother admitted that she did not do much about the problem at that time. She asserted that she would seek a nutritionist for A.J., if he lived with her. Finally, Mother was concerned that A.J. felt "inhibited" when he spoke with her via phone or Skype when Father was in the room, although she admitted that her then-12-year old son acted similarly before the move to Colorado. Mother believed that the situation became worse, however, after the relocation. Father acknowledged that A.J. needs privacy and he asserted that he has attempted to facilitate that and will continue to do so.

{¶34} Father testified at the hearing as follows. He looked locally for employment after losing his job at the College of Wooster after his supervisor received an anonymous letter directing the supervisor to review public records related to Father's divorce action and the issues underlying the divorce. After being unable to find local employment, Father extended his search on a national level. The only employment offer he received was the job he accepted in Colorado. Father admitted he had taken A.J. out of school to accompany him on an out-of-state job interview, but he got permission from the school to do so.

{¶35} Before seeking housing in Colorado, Father conferred with a friend who lives in that area. Father also did research online, and determined which school district was the best in the Denver area. Father enrolled A.J. in that district and chose housing based on the residency requirements for that school district. A.J. is enrolled in two advanced classes. Father conceded that A.J. found the schoolwork challenging at first, but he earned better grades as the school year progressed. Father and A.J. live in a 2-bedroom apartment, although he has enough beds to accommodate S. should she agree to visit. He noted that S. earlier ceased contact with him, and that Father's relocation had no further effect on her relationship with him. In fact, S. did not greet or speak with Father in the hallway before the hearing. Father expressed concern that, other than enrolling S. in counseling, Mother has not done anything to facilitate or encourage S.'s relationship with him, despite Father's actions to ensure that A.J. maintains a relationship with Mother. Father was concerned that Mother would not ensure that A.J. would return his texts and calls or remember him on his birthday (as he encouraged A.J. with respect to Mother) if the court were to order that A.J. reside with Mother.

{¶36} Father discussed A.J.'s involvement in baseball, the friends the child has made, and that Father was an assistant coach for the child's team. He admitted that A.J. is no longer

involved in Hebrew classes or temple, but he explained that, while he was raised in the Jewish faith, he does not participate in temple as an adult. Father believed that A.J. enjoyed attending temple in Wooster because he had friends there. He further believed that A.J.'s disappointment in not having a bar mitzvah arose because he would not have a big party. Father acknowledged that he believed that it was important to Mother that A.J. participate in synagogue activities.

{¶37} Father described A.J.'s daily life in Colorado. A.J. is alone at home for a couple of hours after school until Father returns from work. The child starts his homework in earnest after Father gets home. A.J. and Father both attend counseling, and Father attends a weekly SAA meeting. Father has made A.J. aware of his past struggles with sex addiction in the hope that the child will avoid similar behaviors. He has used humor, like sending the text about an adult mart, to help ease A.J.'s anxiety about the situation. Father acknowledged that he has a deal with A.J. that he will pay him $10 if the child catches Father being dishonest. He has paid the child once for a pornography-related incident and once for a different dishonest act. Father was emphatic that he has not entered into any agreement with A.J. that the child monitor Father's access to internet sites. A.J. does not have the access code for net nanny and cannot discern any sites that may have been blocked by the filtering software. Father's former SAA sponsor has the net nanny code, however, and has the ability to hold Father accountable for any impropriety.

{¶38} A review of the trial court's judgment indicates that the court considered the relevant factors in determining that modification of the parties' agreed shared parenting plan was not in the children's best interest. Several of the enumerated factors were not relevant to this case. The court interviewed both children and considered A.J.'s wishes to remain with Father. The court considered A.J.'s adjustment to his new environment and the interaction and interrelationship with his family members, including his ongoing visitation with Mother and S.

The court was well aware of Father's sex addiction, but received no evidence that Father had relapsed and that A.J. was being adversely affected as a result.

{¶39} Even though Mother argues on appeal that Father's sex addiction compels modification of the parties' shared parenting plan, she admitted at the hearing that she did not file her motion to modify on the basis of becoming aware of the text message incident or after speaking with A.J.'s prior counselor. Instead, she filed her motion only after Father filed his notice of relocation from Wooster and in reliance on those circumstances. In addition, the other incidents to which Mother refers in her appellate brief, including an incident when Mother and a child walked into a room where Father was masturbating in front of a computer (the child did not see the incident, as Mother admitted that she was able to shield the child), an incident when S. saw nude pictures of Father on his iPod Touch, and incidents where Father arranged sexual encounters with women he met online, all occurred either before the parties' divorce was finalized or before the parties' entered into their agreed revised shared parenting plan. As such incidents did not cause Mother concern so as to prevent her from entering into the agreed shared parenting plan whereby A.J. remained with Father while Mother moved to California with S., it is unclear why those past incidents require modification of the plan in A.J.'s best interest only because Father and the child have moved more than 1000 miles closer to Mother.

{¶40} Based on a review of the evidence, this Court concludes that the trial court did not abuse its discretion by denying Mother's motion to modify the parties' agreed revised shared parenting plan. Father wished to maintain A.J.'s residence as his own. Mother earlier agreed that A.J. would live with Father after she moved out-of-state with S. A.J. expressed his desire to stay with Father to both the magistrate and his counselor. A.J. continued to visit with Mother and S. under the same schedule as that set out in the parties' agreed shared parenting plan. He

also continued to have almost daily contact with Mother via text, phone, or Skype, often at Father's encouragement. On the other hand, Mother presented no evidence of her efforts to encourage S. to repair and maintain a relationship with Father. Father initiated counseling for both A.J. and himself upon their relocation to Colorado. Father established a local support system to address his sex addiction issues including obtaining a sponsor and attending weekly SAA meetings. Father has provided Mother with information verifying his compliance with court ordered treatment recommendations upon Mother's request. Mother left the state of Ohio first with one of the children, initiating the children's separate living conditions. Father's subsequent move from Ohio brought A.J. more than 1000 miles closer to Mother. A.J. has adjusted to his new environment, where he is engaged in a more challenging academic environment. He has made friends and participated in one sport, with plans to try out for two additional sports. Based on a review of the record, this Court concludes that the trial court did not abuse its discretion as it was not unreasonable when it concluded that a modification of the parties' agreed shared parenting plan was not in the best interest of the children. Mother's second, third, and fourth assignments of error are overruled.

## III.

{¶41} Mother abandoned her first assignment of error and this Court declines to address it. Mother's remaining assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

MOORE, P. J.
CONCURS.

BELFANCE, J.
CONCURRING IN JUDGMENT ONLY.

{¶42} I concur in the judgment. With respect to the first assignment of error, while I do not believe that the assignment of error was abandoned, I would not find that Mother has demonstrated prejudice. With respect to the remaining assignments of error, I agree that, based upon the overall record, the trial court did not abuse its discretion in overruling mother's motion to modify the shared parenting plan.

{¶43} Consistent with most post-decree matters, the court had to determine A.J.'s best interests through evaluating all of the best-interest factors as made relevant by the evidence. The

record suggests that A.J. wished to remain in Wooster where he could stay at his school and continue with his activities, including studying Hebrew. The record also reflects that the court considered the best-interest factors and accorded weight to A.J's wishes in making its determination that A.J. should reside with Father in Colorado.

{¶44} It is evident that there were areas of concern. For example, the record reflects that A.J. feels great responsibility for his Father's well-being and that he indicated to his counselor that he feared that, if he did not continue to live with Father, Father would "fall apart" and fall back into his bad habits. In addition, one could reasonably question the judgment of an adult who jokes about a sexual addiction with a pre-teenager. However, the court also heard that A.J. continues to attend counseling such that any unhealthy behaviors might be addressed and there was evidence that A.J. was successfully adapting to the new living situation in Colorado. Accordingly, in weighing all of the evidence and given that the trial court was able to observe and assess the demeanor of all of the witnesses, I concur that the trial court's decision was not an abuse of its discretion.

APPEARANCES:

RENEE J. JACKWOOD, Attorney at Law, for Appellant.

R. J. HELMUTH, Attorney at Law, for Appellee.