[Cite as *Dietrich v. Dietrich*, 2014-Ohio-4782.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| CYNTHIA L. DIETRICH | C.A. No. 26919 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOHN W. DIETRICH | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. DR 2003-01-0311 |

DECISION AND JOURNAL ENTRY

Dated: October 29, 2014

MOORE, Judge.

{¶1} Defendant-Appellant, Dr. John Dietrich ("Father"), appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms in part and reverses in part.

I.

{¶2} Father and Plaintiff-Appellee, Dr. Cynthia Dietrich ("Mother"), met in mid-1990 and married in May 1991. When the two met, Father was already a licensed physician and Mother was completing her medical residency. Father enjoyed a high-degree of professional success before the marriage and continued to thrive in his surgery practice after the two married. Meanwhile, Mother established herself as an anesthesiologist and gave birth to the parties' two children: J.D., born in March 1994, and T.D., born in November 1996. During the marriage, the parties enjoyed a high standard of living and benefitted from a combined, yearly income in

excess of one million dollars. In January 2003, Mother filed a complaint for divorce, and Father filed a counterclaim for the same.

{¶3} After a significant amount of litigation, the parties entered into a separation agreement and shared parenting plan. The separation agreement divided the parties' sizeable assets and provided that, beginning July 16, 2004, Father would pay Mother $17,105 per month in spousal support for a period of three years. The shared parenting plan made each party the legal custodian and residential parent of the children, gave the parties equal parenting time, and provided that the parties would share equally in many of the children's expenses, including their tuition at Old Trail School, agreed upon activities, and medical expenses. The child support worksheet attached to the shared parenting plan included Mother's spousal support payments as income and reported a combined income of $985,194, with Father contributing 59.27% of the income and Mother contributing 40.73%. The parties then used Father's percentage and a basic obligation amount of $21,971[1] to calculate Father's child support obligation. The worksheet yielded a total obligation of $1,106.88, per month. By virtue of the shared parenting plan, however, Father agreed to pay child support in the amount of $1,255 per month, plus processing. The parties' decree, separation agreement, and shared parenting plan were all filed on January 13, 2005.

{¶4} Within months of the divorce, the parties began filing a slew of post-decree motions that resulted in years of litigation. Only two of those motions bear upon this appeal: (1) Mother's February 7, 2008 motion to increase child support, and (2) Father's April 18, 2008 motion to modify the shared parenting plan and terminate child support. Relevant to this appeal,

---

[1] Pursuant to the child support schedule set forth in R.C. 3119.021, $21,971 is the basic obligation amount for combined gross incomes of $150,000.

Father's motion for modification asked the court to require the parties to share equally in the cost of the children's high school education, as the shared parenting plan only dealt with the children's grade school educations. A magistrate held hearings on the parties' motions on August 18, 2008, and April 20, 2009.

{¶5} On June 1, 2011, the magistrate issued her decision. The magistrate completed a new child support worksheet and determined that the parties had a combined income of $1,316,473, with Father contributing 82.10% and Mother contributing 17.90% of the income. Because Father's recalculated support obligation was 10% greater than his current support obligation, the magistrate found that a substantial change in circumstances had occurred since the divorce. The magistrate ordered Father, effective February 7, 2008, to pay child support in the amount of $1,446.50 per month, plus processing. Additionally, the magistrate used the approximately 80/20 split in the parties' income to reallocate several child-related expenses. Effective April 18, 2006, the magistrate ordered Father to pay 80% and Mother to pay 20% of the children's educational expenses. Effective February 7, 2008, the magistrate ordered Father to pay 80% and Mother to pay 20% of the children's agreed upon activities. Finally, the magistrate ordered Father to pay 80% and Mother to pay 20% of the children's out-of-pocket medical expenses after the first $100 per calendar year. The trial court adopted the magistrate's decision on the day of its issuance.

{¶6} Father filed objections to the magistrate's decision and later filed a supplemental brief in support of his objections. Mother filed a brief in opposition, and Father filed a reply brief. On September 27, 2012, the trial court ruled on Father's objections. Father appealed the trial court's ruling, but this Court dismissed the appeal because, in ruling on Father's objections, the trial court had not independently entered a judgment. *See Dietrich v. Dietrich*, 9th Dist.

Summit No. 26658 (Dec. 3, 2012). After this Court's dismissal, the trial court issued its final judgment entry.

{¶7} The trial court determined that the greater than 10% difference between Father's current and recalculated child support obligation constituted a substantial change in circumstances and warranted a modification. The court ordered Father, effective February 7, 2008, to pay child support in the amount of $1,446.50 per month, plus processing. Additionally, the court ordered Father to pay 80% of the children's education expenses (effective April 18, 2006), agreed upon activities (effective February 7, 2008), and out-of-pocket medical expenses after the first $100 per calendar year. The court ordered Mother to pay the remaining 20% of the foregoing expenses.

{¶8} Father now appeals from the court's judgment and raises eight assignments of error for our review. For ease of analysis, we consolidate several of the assignments of error.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DETERMINING THAT THERE WERE CHANGED CIRCUMSTANCES SUFFICIENT TO JUSTIFY AN INCREASE IN CHILD SUPPORT.

### ASSIGNMENT OF ERROR II

IT WAS AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO USE DIFFERENT FISCAL YEARS TO CALCULATE [MOTHER'S] AND [FATHER'S] GROSS INCOMES.

### ASSIGNMENT OF ERROR III

IT WAS ERROR TO CALCULATE THE PARTIES' GROSS INCOME WITH REFERENCE SOLELY TO THEIR W-2 EMPLOYMENT INCOME.

**ASSIGNMENT OF ERROR IV**

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT AVERAGED [FATHER'S] INCOME FOR PURPOSES OF CALCULATING [CHILD] SUPPORT.

{¶9}    In the foregoing assignments of error, Father argues that the trial court erred when it increased his child support obligation. He argues that the modification of his support obligation was improper because the income shift that occurred was due almost entirely to the termination of Mother's spousal support; a circumstance that the parties contemplated at the time of the original child support order. Additionally, he argues that the court incorrectly calculated the parties' income because it: (1) used different fiscal years for each party, (2) ignored the parties' other income sources and Father's 2008 business losses by relying solely on their W-2 employment incomes, and (3) averaged his income over three years, despite evidence of losses in the most recent year.

{¶10}    Generally, absent an error of law, "the decision to adopt, reject, or modify a magistrate's decision lies within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion." *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 5. However, "[i]n so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. A de novo review is appropriate when the issue is whether the trial court correctly applied the child support statute in calculating a party's income. *Bentley v. Rojas*, 9th Dist. Lorain No. 10CA009776, 2010-Ohio-6243, ¶ 13. Conversely, when determining whether the court properly exercised its discretion under the statute in choosing to average a party's income, this Court employs the abuse of discretion standard of review. *See Nagel v. Nagel*, 9th Dist. Lorain No. 09CA009704, 2010-Ohio-3942, ¶ 34. Likewise, this Court reviews a

trial court's ultimate child support order for an abuse of discretion. *Irish v. Irish*, 9th Dist. Lorain No. 10CA009810, 2011-Ohio-3111, ¶ 20. Abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶11} "When modifying an existing child support order, a trial court must find that a change of circumstances has occurred." *Farmer v. Farmer*, 9th Dist. Medina No. 03CA0115-M, 2004-Ohio-4449, ¶ 10. "[T]he threshold test in modifying an existing child support order is the statutory ten percent test" set forth in R.C. 3119.79(A). *Id.* at ¶ 20. *See also DePalmo v. DePalmo*, 78 Ohio St.3d 535, 540-541 (1997). To apply the test, "the trial court must complete a new child support worksheet, recalculating the amount of support required based on the new figures." *Maguire v. Maguire*, 9th Dist. Summit No. 23581, 2007-Ohio-4531, ¶ 7, citing R.C. 3119.79(A).

{¶12} "The level of support for a combined gross income of $150,000 is the starting point from which a trial court exercises its discretion in fashioning a child support award for parents with higher incomes." *Bajzer v. Bajzer*, 9th Dist. Summit No. 25635, 2012-Ohio-252, ¶ 5. In those cases, a court

> shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court * * * shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court * * * determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount.

R.C. 3119.04(B). For purposes of calculating child support, "'gross income' means * * * the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable * * *." R.C. 3119.01(C)(7).

{¶13} Mother and Father both filed their respective child support motions in 2008. At the August 2008 and April 2009 hearings before the magistrate, the parties presented the magistrate with a great deal of their financial information. Relevant to this appeal, Mother provided the magistrate with her individual income tax returns (her 1040 forms) from 2005, 2006, 2007, and 2008. She likewise provided the magistrate with her W-2 statements from those years. Father also provided the magistrate with his individual income tax returns (his 1040 forms) from 2005, 2006, 2007, and 2008. He did not, however, provide all of his W-2 statements from those years. He only provided the magistrate with his W-2 statement from 2008. In addition, Father provided the magistrate with: (1) several interest and dividend statements for Mother from 2007, and (2) his own Schedule K-1 Shareholder's Share tax returns from 2008, showing that three of the entities in which he has an interest suffered $128,085 in business losses.

{¶14} One of the exhibits Mother introduced at the hearing was a compilation of the parties' respective employment incomes from 2005 through 2008. The exhibit (Exhibit 19) includes a three-year average of the parties' respective incomes, using the income years 2006-2008, and a four-year average, using the income years 2005-2008. The source of the individual income amounts listed on Exhibit 19 varies. The 2008 income amounts listed on the exhibit derive from box 18 of the parties' respective W-2 statements (local wages, tips, etc.). Yet, the 2005-2007 income amounts derive from line 7 of the parties' respective 1040 forms (wages,

salaries, tips, etc.). Line 7 on a 1040 form corresponds to box 1 on a W-2 statement (wages, tips, other comp.), not box 18.

{¶15} In arriving at the parties' respective incomes, the trial court employed the figures set forth in Mother's Exhibit 19. The court determined that Mother's annual gross income was $240,425; the amount listed on box 18 of Mother's 2008 W-2 statement. With respect to Father, the court determined that it was appropriate to employ income averaging. Rather than use Father's 2008 income, however, the trial court averaged Father's income from 2005-2007. The court determined that Father's annual gross income was $1,102,915; the average of the amounts listed on line 7 of Father's 2005, 2006, and 2007 1040 forms.

{¶16} We first address Father's argument that the trial court abused its discretion when it chose to average his income. Father agreed at the hearing that multiple factors caused his income to vary. He specified that his income was based, not solely on the amount he worked, but also on the insurance payments he received for that work. He testified that he had "no way of controlling the payor mix that walks in our front door" and that "[e]very year, we have different contracts that we sign * * * with insurers." Additionally, he testified that the number of partners he had in his office affected his income. Father indicated that his income had decreased because he had more partners in his office, he had missed work for court proceedings, and, after turning 50, he was no longer eligible for on call time. Even so, Father also testified that, due to the economy, he had not reduced his hours since turning 50.

{¶17} R.C. 3119.05(H) provides that, in calculating a party's gross income, a court, "when appropriate, may average income over a reasonable period of years." "This Court ha[s] held that the decision as to the propriety of averaging a parent's income lies in the sound discretion of the trial court which is in the best position to weigh the facts and circumstances."

*Morrow v. Becker*, 9th Dist. Medina No. 11CA0066-M, 2012-Ohio-3875, ¶ 37. By his own testimony, Father admitted that multiple factors caused his income to vary from year to year. Moreover, Father's 1040 forms showed varying wages in the amounts of $936,976 for 2008; $1,263,886 for 2007; $1,083,022 for 2006; and $961,837 for 2005. Given the undisputed fluctuations in Father's income, we cannot conclude that the lower court abused its discretion in choosing to average it. *See Akin v. Akin*, 9th Dist. Summit Nos. 25524 & 25543, 2011-Ohio-2765, ¶ 14. Father's fourth assignment of error is overruled on that basis.

{¶18} While we have concluded that the court acted within its discretion in choosing to average Father's income over a period of years, we cannot draw the same conclusion with respect to the years that the court chose to average. In calculating the parties' income, the court relied upon Mother's financial information from 2008, but disregarded Father's financial information from that same year. Instead, it relied upon his financial information from 2005-2007. The court offered no reason for its doing so in spite of Father's objection to the magistrate's same handling of the parties' financial information. "[W]e believe that it was incumbent upon the trial court to set forth its reasons for ignoring the most recent income information in calculating [Father's] gross income." *Poling v. Poling*, 10th Dist. Franklin No. 13AP-189, 2013-Ohio-5141, ¶ 21. Father's 1040 form evidenced that Father's 2008 wages were his lowest in recent years. Even so, the trial court appears to have ignored Father's 2008 financial information entirely. "Under the circumstances, the trial court's decision to ignore evidence of [Father's] [2008] income was unreasonable and an abuse of discretion." *Id.* at ¶ 22. Accordingly, Father's second assignment of error is sustained on that basis. This matter must be remanded for the court to recalculate Father's income and complete a new child support worksheet with the correct financial information.

**{¶19}** In his third assignment of error, Father argues that the trial court erred by calculating the parties' gross income based strictly on their W-2 statements. He avers that, consistent with the statute, the court should have considered the parties' income from all sources. He further avers that the court failed to take into account the business losses he suffered in 2008, none of which were reflected on his W-2 statement.

**{¶20}** With respect to Father, the trial court did not rely upon his 2008 income at all. Were this Court to consider the effect of Father's 2008 business losses on his income calculations, we would be doing so in the first instance. We decline to do so. Because this matter must be remanded for the trial court to recalculate Father's income, this portion of Father's third assignment of error is premature. Therefore, we decline to address it.

**{¶21}** With respect to both parties, the record reflects that the trial court strictly used Mother's 2008 wages (taken directly from box 18 of her W-2 statement) and Father's 2005-2007 wages (taken directly from line 7 of his 1040 forms), to calculate their gross incomes. Gross income, however, is defined as

> the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; * * * social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income.

R.C. 3119.01(C)(7). Mother acknowledged at the hearing that she had not included capital gains or interest in reporting her income to the court. Moreover, the 1040 forms from both parties clearly show income from dividends and capital gains. In calculating the parties' gross incomes,

the trial court did not account for any additional income beyond their reported wages. By failing to account for other sources of income in calculating the parties' gross incomes, the court failed to comply with the child support statute. *See id.* As such, to the extent Father's third assignment of error challenges the trial court's calculation of the parties' gross incomes, it is sustained. On remand, the trial court must recalculate the parties' gross incomes, including income from other sources.

{¶22} In his first assignment of error, Father argues that the court erred by concluding that there were changed circumstances sufficient to justify an increase in child support. He argues that Mother's "loss of spousal support, and the loss of spousal support alone, drove the 10% deviation that the trial court relied upon in its decision." (Emphasis omitted.) As stated above, "the threshold test in modifying an existing child support order is the statutory ten percent test" set forth in R.C. 3119.79(A)." *Farmer*, 2004-Ohio-4449, at ¶ 20. To apply the ten percent test, a court necessarily must complete a new child support worksheet. *Maguire*, 2007-Ohio-4531, at ¶ 7. Given that the trial court here must recalculate the parties' incomes and complete a new child support worksheet, we cannot determine whether it erred in concluding that a substantial change in circumstances occurred. As such, Father's first assignment of error is premature.

{¶23} Upon remand, the trial court must recalculate the gross incomes of both parties and complete a new child support worksheet. In calculating Father's gross income, the court should be mindful that, by averaging Father's income, the court will have looked back to a time period when Father was still paying Mother a substantial amount of spousal support. For the reasons outlined above, Father's first assignment of error is premature. His second assignment of error is sustained, and his fourth assignment of error is overruled. Insofar as it relates to his

2008 income, Father's third assignment of error is premature. Insofar as it relates to the court's calculation of the parties' gross incomes, his third assignment of error is sustained.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT ABUSED ITS DISCRETION BY MODIFYING THE EXPENSE ALLOCATIONS AGREED TO BY THE PARTIES IN THEIR SHARED PARENTING PLAN.

{¶24} In his fifth assignment of error, Father argues that the court abused its discretion when it modified various expense allocations set out in the parties' shared parenting plan. For the reasons set forth below, we agree that the court erred when it modified the parties' shared parenting plan.

{¶25} As set forth above, we review a trial court's discretionary decision to adopt a magistrate's decision "with reference to the nature of the underlying matter." *Tabatabai*, 2009-Ohio-3139, at ¶ 18. Generally, "[t]his Court reviews a trial court's decision to modify * * * [a shared parenting plan] for an abuse of discretion." *Batcher v. Pierce*, 9th Dist. Summit No. 26785, 2013-Ohio-4677, ¶ 22. When the issue is "whether the trial court correctly interpreted and applied a statute, [however,] [] [the] appeal presents a question of law." *Gunderman v. Gunderman*, 9th Dist. Medina No. 08CA0067-M, 2009-Ohio-3787, ¶ 7. In those instances, "we apply a de novo standard of review, giving no deference to the trial court's determination." *Id.*

{¶26} Under R.C. 3109.04, divorcing parties may submit a shared parenting plan to the court for its approval and incorporation into a shared parenting decree.

A plan for shared parenting shall include provisions covering all factors that are relevant to the care of the children, including, but not limited to, provisions covering factors such as physical living arrangements, child support obligations, provision for the children's medical and dental care, school placement, and the parent with which the children will be physically located during legal holidays, school holidays, and other days of special importance.

R.C. 3109.04(G). Yet, "[the] plan is not used by a court to designate the residential parent or legal custodian; that designation is made by the court in an order or decree." *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 31. As such, "[t]he standard * * * for modification of a shared-parenting plan is lower  because the factors contained in a shared-parenting plan are not as critical to the life of a child as the designation of the child's residential parent and legal custodian." *Id.* at ¶ 36.

{¶27} R.C. 3109.04(E)(2)(b) provides that:

> The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children.

Accordingly, the only prerequisite to a modification of the terms of a shared parenting plan is that the modification be in the best interests of the children. *Fisher* at ¶ 33, citing R.C. 3109.04(E)(2)(b). *Accord Syverson v. Syverson*, 9th Dist. Lorain No. 12CA010205, 2012-Ohio-5569, ¶ 9.

{¶28} Article 6 of Mother and Father's shared parenting plan provides as follows:

> Each parent shall provide for the financial needs of the children during the period when the children are in such parent's care. Child support in the amount of $1,255.00 per month, plus 2% processing charge, by wage assignment through the Summit County Child Support Enforcement Agency is effective July 16, 2004.

> Each parent shall be responsible for the major items of the children's clothing for use in his or her home. The parents shall consult about these items, and each is free to supplement the children's basic requirements.

> The children presently attend Old Trail School. Both parents shall share equally the cost of tuition, cafeteria, and other expenses related to said school.

> Parents shall not involve the children in activities during the other parent's time without written agreement. The costs for agreed upon activities shall be divided

equally. Costs for activities not agreed on by both parents shall be paid 100% by the parent who involves the child in the activity.

The parties shall each claim one child as a dependency exemption unless either party would not derive any benefit from the exemption, in which case the other party shall claim both exemptions.

The shared parenting plan further provides that "[a]ny ordinary and extra-ordinary medical, dental, optical, orthodontia, psychological and prescription expenses incurred on behalf of the children shall be divided equally between the parties to the extent that the same is not covered by either of the parties' medical insurance."

{¶29} On April 18, 2008, Father moved to modify the parties' shared parenting plan. Relevant to this appeal, Father's motion asked the court to modify the plan so as to require the parties "to share equally in all costs associated with each child's high school education, including, but not limited to, tuition, fees, books, cafeteria, tutoring, college application costs, college visitation, and any and all other expenses related to said school." The sole request Father made in his motion, therefore, was to broaden the shared parenting plan to include educational expenses related to high school and college preparation. Neither party ever filed a motion asking the court to modify the children's elementary school expenses, agreed upon expenses, or medical expenses.

{¶30} In its judgment entry, the trial court wrote the following:

20. In the Shared Parenting Plan, the parties agreed to split the children's educational and out-of-pocket expenses equally.

21. Under the Magistrate's Decision, after the modification of child support, the children's educational and out-of-pocket medical expenses are allocated 80% to [Father] and 20% to [Mother].

22. The Court agrees that consideration of the educational and out-of-pocket medical expenses after a modification of child support is proper.

23. After considering the child support worksheet, the Court finds that a division of the responsibility for the children's educational and out-of-pocket medical expenses with 80% to [Father] and 20% to [Mother] is equitable.

The court then granted "[Mother's] motion for re-allocation of education expenses." The court ordered Father to pay 80% and Mother to pay 20% of the children's educational expenses, effective April 18, 2006,[2] and ordered them to pay the same percentages of the children's out-of-pocket medical expenses without setting forth an effective date. Additionally, the court ordered Father to pay 80% and Mother to pay 20% of the children's agreed upon expenses, effective February 7, 2008.[3] The court did not offer any rationale for its doing so.

{¶31} Father argues that the trial court erred by modifying the shared parenting plan sua sponte and by making the modifications retroactive. He avers that Mother's loss of spousal support was the only change of substance that occurred after the parties entered into their shared parenting plan. According to Father, the parties anticipated that change at the time they divorced, but nevertheless agreed to split the expenses equally because they could afford to do so. He argues that no evidence was offered, "and the trial court did not find, that the re-allocation was necessary to serve the best interest of the children."

{¶32} As noted above, a trial court may modify a shared parenting plan "upon its own motion at any time" so long as the modification is in the best interests of the children. R.C. 3109.04(E)(2)(b). The fact that the modification here may have occurred upon the court's own motion or in the absence of a substantial change of circumstances was not fatal to it. *See id. Compare Malmon-Berg v. Malmon-Berg*, 9th Dist. Wayne No. 13CA0005, 2014-Ohio-1784, ¶ 16 (modification to shared parenting plan required showing of change of circumstances where

---

[2] As previously noted, Father filed his motion to modify the shared parenting plan on April 18, 2008, not 2006. Moreover, Mother never filed a motion to modify the shared parenting plan.
[3] February 7, 2008, was the date Mother filed her motion to modify child support.

parties had "tacitly agreed in their revised shared parenting plan that any modification of the plan would be governed by R.C. 3109.04(E)(1)(a)"). The same cannot be said, however, with regard to the court's failure to offer any rationale or make any findings that the modifications it ordered were in the best interests of the children. *See* R.C. 3109.04(E)(2)(b).

**{¶33}** With regard to the children's educational and medical expenses, the court found that it would be "equitable" to reallocate those expenses so as to align their division with the division of the parties' income, as calculated by the new child support worksheet. It did not discuss whether those reallocations were in the children's best interests or include an explicit finding to that end in its judgment entry. With regard to the agreed upon expenses, the court did not offer any rationale for its reallocation. Likewise, it did not include an explicit finding in its entry that the reallocation would be in the children's best interests. The court simply reallocated the agreed upon expenses in the same manner as the other expenses, by aligning them with the division of the parties' income, as calculated by the new worksheet. Moreover, it made all of the foregoing modifications after it specifically found that "[a]ll evidence produced at the hearing shows that the children live a very comfortable lifestyle and [that] each party is capable of meeting all of the children's financial needs."

**{¶34}** It is not at all clear from the trial court's judgment entry that the court modified the parties' shared parenting plan because it determined that the modifications were in the children's best interests. Instead, it appears that the court reallocated all of the expenses at issue based strictly upon the income percentages it derived from the recalculated child support worksheet. We have already determined, however, that the court erred in recalculating the worksheet. More importantly, the court failed to explain how modifying the expense allocations in the shared parenting plan to mirror the parties' income percentages would best serve the

interests of the children. The record is replete with evidence that both parties are medical professionals who earn substantial incomes. The fact that Father has, and has historically always had, the higher income does not necessarily mean that modification is in the children's best interests. In any event, this Court takes no position on that issue. R.C. 3109.04(E)(2)(b) only permits a trial court to modify a shared parenting plan "if the court determines that the modifications are in the best interest of the children." Having reviewed the record and the court's judgment entry, we cannot conclude that the court actually determined that the modifications it ordered were in the children's best interests. For that reason, we must conclude that the court failed to comply with R.C. 3109.04(E)(2)(b) and erred by ordering the modification of the parties' shared parenting plan. Father's fifth assignment of error is sustained on that basis.

## ASSIGNMENT OF ERROR VI

> IT WAS ERROR FOR THE TRIAL COURT TO RETROACTIVELY ORDER MODIFICATION OF THE TUITION AND EDUCATIONS EXPENSE ALLOCATION UNDER THE SHARED PARENTING PLAN BACK TO APRIL 18, 2006.

## ASSIGNMENT OF ERROR VII

> IT WAS ERROR TO ORDER RETROACTIVE MODIFICATION OF TUITION AND EDUCATION-RELATED EXPENSES, AND AGREED-TO EXTRACURRICULAR EXPENSES SET FORTH IN THE SHARED PARENTING PLAN.

{¶35} In his sixth and seventh assignments of error, Father challenges the trial court's retroactive application of its order, reallocating the children's tuition, educational, and agreed upon expenses. Based on our resolution of Father's fifth assignment of error, his sixth and seventh assignments of error are moot. We, therefore, decline to address them. *See* App.R. 12(A)(1)(c).

## ASSIGNMENT OF ERROR VIII

THE TRIAL COURT VIOLATED [FATHER'S] DUE PROCESS RIGHTS WHEN IT ORDERED [FATHER] TO PAY WHATEVER [] AMOUNT [MOTHER] CALCULATES AS EXPENSE REIMBURSEMENT WITHOUT JUDICIAL FACT-FINDING.

**{¶36}** In his eighth assignment of error, Father argues that the court violated his due process rights. As previously set forth, the court's judgment entry modified the parties' shared parenting plan, such that Mother was only responsible for 20% of the children's tuition, agreed upon expenses, and medical expenses. Because the court made the modification retroactive, it determined that Mother was entitled to be reimbursed for the amounts she had paid in excess of her 20% share. The court ordered Mother to calculate the amounts she had overpaid and submit a reimbursement request to Father. The court further ordered Father to review the request and tender payment to Mother within 30 days. Father argues that, by not affording him a meaningful opportunity to challenge Mother's calculations, the court violated his due process rights. Based on our resolution of Father's fifth assignment of error, however, his eighth assignment of error is moot. We, therefore, decline to address it. *See* App.R. 12(A)(1)(c).

### III.

**{¶37}** Father's second and fifth assignments of error are sustained. His first assignment of error is premature, and his third assignment of error is premature in part and overruled in part. His fourth assignment of error is overruled, and his remaining assignments of error are moot. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CARLA MOORE
FOR THE COURT

CARR, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

TODD ANTHONY MAZZOLA, Attorney at Law, for Appellant.

RANDAL A. LOWRY and KENNETH L. GIBSON, Attorneys at Law, for Appellee.